IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| GEORGIA CENTRAL UNIVERSITY, INC. | : | CASE NO. 20-67718-BEM |
| Debtor. | : | |
| BANK OF HOPE | : | |
| | : | CONTESTED MATTER |
| v. | : | |
| GEORGIA CENTRAL UNIVERSITY, INC. | : | |

**BANK OF HOPE'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR RELIEF FROM STAY**

COMES NOW Bank of Hope ("BOH"), a creditor and party in interest in the above matter, and files this its Motion to Dismiss Or, In The Alternative, For Relief From Stay and further shows this Court as follows:

**I. STATEMENT OF FACTS**

1. Georgia Central University, Inc. ("Debtor") owns certain real property located at 6789, 6801 and 6803 Peachtree Industrial Boulevard, Atlanta, Georgia 30360 (the "Property") which is an approximately 3.8 acre lot on which a commercial office center is located.

2. BOH holds a perfected security interest in the Property as well as the rents, accounts and other personal property owned by the Debtor located at or otherwise associated with the Property by virtue of a Security Deed from the Debtor which was properly recorded in the real estate records of the Clerk of Superior Court of DeKalb County, Georgia.  BOH is also

the holder of an Assignment of Rents and Leases from Debtor and UCC-1 which were properly recorded in the records of the Clerk of the Superior Court of DeKalb County, Georgia further securing its interest in the rents, profits, accounts and other personal property of the Debtor. True and correct copies of the Security Deed, Assignment of Rents and Leases and UCC-1 are attached hereto at Exhibit "1."

3. The Debtor granted the foregoing security interests in conjunction with a loan to Debtor in the original principal amount of $1,870,000.00 which is reflected by a Promissory Note executed by Debtor on December 3, 2010 ( the "Note"). A true and correct copy of the Note is attached hereto as Exhibit "2."

4. The indebtedness due under the Note matured on December 3, 2017 at which time the balance owed on the Note was due. Debtor failed to pay the balance owed on the Note when it became due. As a result, on May 8, 2018, BOH sent written notice to the Debtor of its defaults.

5. On August 7, 2018, Debtor filed a Voluntary Petition for bankruptcy under Chapter 11. See Doc. 1 filed in In re: Georgia Central University; U.S. Bankr. Ct., N.D. Ga., Atl Div.; Case No. 18-63208-BEM ("the 2018 Bankruptcy Case").

6. On August 21, 2018, the U.S. Trustee filed a Motion to Dismiss the 2018 Bankruptcy Case due to the Debtor's failure to provide certain business and financial information including proof of the establishment of debtor-in-possession bank accounts; proof that Debtor maintains acceptable insurance coverage; copies of Debtor's most recent federal

~ 2 ~

income tax returns; and a 90 day listing of all disbursement checks. See Doc. 14 filed in the 2018 Bankruptcy Case.

7. On September 10, 2018, a Consent Order Dismissing Case was entered due to Debtor's lack of acceptable insurance coverage thereby causing unnecessary risk to the estate. See Doc. 20 filed in the 2018 Bankruptcy Case.

8. On September 20, 2018, following the dismissal of the 2018 Bankruptcy Case, BOH filed a Complaint against Debtor and its individual owner and guarantor, Paul Changhwan Kim, in the Superior Court of DeKalb County, Georgia (the "Superior Court") seeking an award of damages for the breach of the Note and related loan documents as well as for the appointment of a receiver for the Property (the "State Court Litigation"). A true and correct copy of the Complaint filed by BOH in the State Court Litigation is attached hereto as Exhibit "3."

9. On July 31, 2019, a Final Order Granting Summary Judgment in favor of BOH was entered in the State Court Litigation awarding BOH damages in the total amount of $1,994,248.56 with interest accruing thereon at the rate of $491.098 per day. Additionally, the Superior Court entered an Order Appointing Receiver appointing Douglas P. Wilson as the Receiver for the Property (the "Receiver") due to the Debtor's mismanagement of the Property including its failure to pay the debt on the Property as well as its failure to provide insurance for the Property and pay taxes on the Property. True and correct copies of the foregoing orders are attached hereto as Exhibits "4" and "5."

10. Debtor did not appeal either order. In fact, Debtor did not oppose BOH's motions for summary judgment or for the appointment of a receiver in the State Court Litigation.

11.     The Receiver subsequently met with Mr. Kim, the individual owner of the Debtor, who was initially cooperative with the Receiver and surrendered possession of the Property to the Receiver.  <u>See</u> Receiver's Inventory and Initial Report filed on September 17, 2019 in the State Court Litigation, a true and correct copy of which is attached hereto as Exhibit "6."

12.     Since then, the Receiver has been in possession of the Property and managed and operated the Property with funding provided by BOH.  Additionally, the Receiver enlisted the services of various commercial real estate firms in an effort to determine the market value of the Property and to market the Property for sale. <u>See</u> Receiver's Report Nos. 2-10 filed in the State Court Litigation, true and correct copies of which are attached hereto as Exhibit "7."

13.     On January 3, 2020, the Receiver filed a Motion for Approval of the Purchase and Sale Agreement in which he described the efforts to determine the market value of the Property and to market the Property for sale and sought approval of a Purchase and Sale Agreement for the sale of the Property for the purchase price of $2,300,000.00.  A true and correct copy of the Receiver's Motion for Approval of the Purchase and Sale Agreement is attached hereto as Exhibit "8."

14.     A hearing of the Receiver's motion was scheduled to originally occur on February 20, 2020.  And, the Receiver provided proper notice of the hearing to the Debtor and all of the Debtor's secured creditors.

15.     Shortly before the hearing of the Receiver's motion was scheduled to occur, the United States of America entered an appearance in the State Court Litigation and sought to intervene for the purpose of addressing several tax liens filed against the Debtor and the

Property. As a result, the hearing was postponed in order to permit the United States to intervene and address its tax liens.

16. Once the issues related to the United States' intervention in the State Court Litigation were resolved, the hearing of the Receiver's motion was re-scheduled. <u>See</u> Amended Notice of Continued Hearing on Receiver's Motion for Approval of the Purchase and Sale Agreement, a true and correct copy of which is attached hereto as Exhibit "9." Unfortunately, before the hearing could be held, the COVID-19 pandemic occurred and the Georgia Supreme Court declared a Statewide Judicial Emergency ordering the closing of the courts and causing the hearing to again be postponed.

17. On March 19, 2020, Debtor's attorney in this case entered an appearance on behalf of the Debtor in the State Court Litigation. <u>See</u> Notice of Substitution of Counsel filed on March 19, 2020 in the State Court Litigation, a true and correct copy of which is attached hereto as Exhibit "10."

18. On May 18, 2020, following additional postponements due to the COVID-19 pandemic and extensions of the Supreme Court's Judicial Emergency Order, the Superior Court conducted a status conference via ZOOM on May 18, 2020 to determine whether it would be feasible to hold the hearing via video conference. However, at the ZOOM status conference, Debtor's attorney objected to the scheduling of a hearing while the Debtor's principal, Mr. Kim, was in Korea. And, one of the junior secured creditors, Charlie So, objected to having a hearing by video conference because he was not familiar with the technology used.

19. The Superior Court sought to satisfy both the Debtor's and Mr. So's concerns by scheduling an in person hearing to be held on June 22, 2020 after Mr. Kim returned to the United States. See Order to Proceed with Courtroom Hearing filed on May 19, 2020 in the State Court Litigation, a true and correct copy of which is attached hereto as Exhibit "11." Once again, though, the hearing was continued due to the extension of the Georgia Supreme Court's Judicial Emergency Order. See Order Continuing Hearing and Reinstating Deadline on Time to Intervene filed on June 22, 2020 in the State Court Litigation, a true and correct copy of which is attached hereto as Exhibit "12."

20. Throughout all of the above, the Debtor has not filed any response whatsoever in the State Court Litigation to the Receiver's motion to approve the sale of the property. It has not filed any objection to the methods used by the Receiver to determine the market value of the Property, the marketing of the Property for sale or to the purchase price for the proposed sale of the Property despite being represented by counsel throughout the State Court Litigation which has been pending for almost 2 full years. And, it has not even attempted to pay any of its debt to BOH during that time even in monthly installments.

21. Meanwhile, the Receiver has remained in possession of the Property. And, BOH has incurred substantial expenses for the maintenance and operation of the Property for the past eleven (11) months including the payment of the Receiver's fees for the operation of the Property, taxes on the Property and insurance for the Property which total $86,556.24 to date. The amount that Debtor owes to BOH on its judgment has also increased to $2,158,766.39 including accrued post judgment interest through June 30, 2020.

22. In light of the foregoing circumstances and the timing of the filing of Debtor's skeletal and error filled petition, it appears that Debtor has filed its petition in bad faith with the sole purpose of frustrating and delaying the Receiver's sale of the Property which is already the subject of the pending State Court Litigation. Therefore, BOH requests that the Court either dismiss this bankruptcy case in its entirety or lift the stay so that the proceedings in the State Court Litigation can continue until conclusion.

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. This Bankruptcy Case Should Be Dismissed Because It Was Not Filed In Good Faith.

"Chapter 11 provides strong weapons, not generally available outside of bankruptcy, to help debtors deal with financial distress. These weapons pose substantial hardships on creditors." In re Liberate Tech, 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004). "To prevent abuse of Chapter 11, courts have implied the requirement that the petition be filed in good faith." Id.. "The 'good faith' filing requirement . . . [is intended] to deter filings that seek to achieve objectives outside the legitimate scope of bankruptcy laws.' The purpose of the good faith requirement is to ensure that the hardships imposed on creditors are justified by fulfillment of statutory objectives." Id. "The good faith requirement operates through section 1112(b), which authorizes dismissal of a chapter 11 petition for 'cause.'" Id. Section 1112 of the Bankruptcy Code provides, in relevant part, that:

"Except as provided in paragraph (2) and subsection (c), on request of a party in interest,

> and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate."

11 U.S.C. § 1112(b)(1) (emphasis added). The purpose of § 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope for rehabilitation." In re Vallambrosa Holdings, L.L.C., 419 B.R. 81, 88 (S.D. Ga. 2009)(citations omitted).

Section 1112(b)(4) provides a non-exhaustive list of "causes" for conversion or dismissal. In re Strug-Division, LLC, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007). In addition, "cause" exists to dismiss a bankruptcy case where the debtor has filed a petition in bad faith. See In re Albany Partners, Ltd., 749 F. 2d 670 (11th Cir. 1984); In re Natural Land Corp., 825 F. 2d 296 (11th Cir. 1987); In re Phoenix Piccadilly, Ltd., 849 F. 2d 1393 (11th Cir. 1988); In re State Street Houses, Inc., 356 F. 3d 1345 (11th Cir. 2004).

Unlike ordinary motions to dismiss a bankruptcy case, where "the movant bears the burden of proving . . . that cause exists for a dismissal of a debtor's case . . . when lack of good faith is raised as a basis for dismissal for cause, the debtor bears the burden of proving that the filing was made in good faith." In re Fox, 232 B.R. 229, 233 (Bankr. D.Ks. 1999). See also In re Strug-Division, 375 B.R. at 448; Stage I Land Co. v. U.S., 71 B.R. 225, 229 (D. Minn. 1986).

In determining whether a debtor has filed a petition in bad faith, the court may consider the following:

> (1) the lack of "realistic possibility of an effective reorganization;" (2) evidence that "the

~ 8 ~

>debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;" (3) whether the debtor is seeking to use the bankruptcy provisions "to create and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business"; (4) the timing of the debtor's relevant actions; (5) whether the debtor appears to be merely a "shell" corporation; and (6) whether the debtor was created, or the subject property transferred to the debtor, "for the sole purpose of obtaining protection under the automatic stay [of Chapter 11] by filing bankruptcy."

Natural Land Corp., 825 F. 2d at 298 (internal citations omitted)(list of factors is not exhaustive; nor is there any single factor that will necessarily lead to a finding of bad faith). Additionally, the court may also consider the factors listed below which evidence "an intent to abuse the judicial process and purpose of the reorganization provisions" or which demonstrate that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." Phoenix Piccadilly, 849 F. 2d at 1394 (citing Albany Partners, 749 F. 2d at 674). Such factors include:

(a) the debtor has only one asset (i.e., the Property) in which it does not hold legal title;

(b) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(c) the debtor has few employees;

(d) the Property is the subject of a foreclosure action as a result of arrearages on the debt;

(e) the debtor's financial problems involve essentially a dispute between the debtors and the secured creditors which can be resolved in the pending state court action;

(f) the timing of the debtor's filing evidence an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; and

(g) the lack of a realistic possibility of an effective reorganization.

Id. at 1394-95; State Street Houses, 356 F. 3d at 1347.

The "purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state . . . If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost is raison d'etre[.]" Matter of Little Creek Dev. Co. 779 F. 2d 1068, 1073 (5th Cir. 1986) (internal citations omitted).  Hence, "[r]esort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation[.]" Id.; Vallambrosa Holdings, 419 B.R. at 89-92 (test of rehabilitation is whether debtor's business prospects justify continuance of the reorganization effort; therefore, at minimum, a confirmable plan requires the prospect of re-establishment of a business); see, e.g., In re Club Tower, L.P., 138 B.R. 307, 310 (Bankr. N.D. Ga. 1991) (finding of bad faith filing, where the debtor had one asset (Property) upon which the secured creditor's liens and security interest fully encumbered; had only a few unsecured creditors whose claims were relatively small; and had "no employees, no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments, all income from the JJ Property having been absolutely assigned to [the secured creditor].").

Here, the Debtor effectively abandoned its obligations related to the Property failing to pay BOH for its loan on the Property for almost 3 years or to properly insure the Property as admitted in the 2018 Bankruptcy Case.  It has also failed to pay taxes on the Property and has effectively abandoned management of the Property to the Receiver at the expense of BOH.

Thus, it has clearly grossly mismanaged the estate.

In its voluntary petition, Debtor erroneously lists a total of five unsecured creditors, including BOH, to whom it indicates it owes a total of $2,825,000.00 while stating that it has assets valued at only $0 - $50,000.00.   As the Receiver's Motion for Approval of the Purchase and Sale Agreement filed in the State Court Litigation appears to correctly note, the creditors listed by Debtor all hold secured interests in the Property and the total principal amount of Debtor's outstanding debts to those creditors is $2,982,411.82.  The Debtor has no serious prospect of prospect of re-organization or of servicing its debt.  And, even it did, that should not override a finding of bad faith.  Phoenix Piccadilly, 849 F. 2d at 1394.

**B. Alternatively, The Court Should Grant Relief From The Stay To Allow the Pending State Court Litigation To Proceed.**

As the Court is undoubtedly well aware, 11 U.S.C. § 362(d) provides:

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2)     with respect to a stay of an act against property under subsection (a) of this section, if –
>
>    (A)     the debtor does not have an equity in such property; and
>
>    (B)     such property is not necessary to an effective reorganization;"

~ 11 ~

"The test developed by courts to determine if it is appropriate to lift the automatic stay and allow the continuation of [a] lawsuit pending in state court is whether: a) Any 'great prejudice' to either the bankrupt estate or the debtor will result from the continuations of a civil suit; b) the hardship to the [non-debtor party] by maintenance of the stay considerably outweighs the hardship to the debtor; and c) the creditor has a probability of prevailing on the merits of his case." In re Williams, 302 B.R. 923, 926 (Bankr. M.D. Ga. 2003) (citing In re South Oakes Furniture, Inc., 167 B.R. 307 (Bankr. M.D. Ga. 1994).

As noted in the accompanying Affidavit of Thomas K. Olson which was filed in the State Court Litigation (see Exhibit "8" hereto), the recommended list price for the Property was between $2,560,000 and $3,000,000 and the anticipated sales price range was between $2,150,000 and $2,500,000 based on two Broker Opinions of Value received by the Receiver. (One broker declined to provide an Opinion of Value because it did not consider the Property up to its standards). And, the highest and best offer that the Receiver received for the purchase of the sale of the Property was $2,300,000.00 which is within the range of sales prices anticipated by the brokers. (All but one of the other offers was below the anticipated sales price range).

The amount that Debtor owed BOH at the time that it filed its voluntary petition in this case was $2,158,766.39. Once commissions and other expenses of sale are considered, it appears that there is not a sufficient equity cushion in the Property. And, when the other secured debts are considered, it appears that Debtor does not have any equity in the Property whatsoever.

Furthermore, the Debtor filed this case as the Superior Court was attempting to re-schedule a hearing of the Receiver's motion in the State Court Litigation in which it could assess

the merits of the proposed sale of the Property and the interests of all of the secured creditors as well as the Debtor which the Debtor presumably intends to address in this case instead. The State Court Litigation had already been pending for almost 2 years. And, the Receiver's motion had been pending for 6 months without any response or objection from the Debtor. During that time (and in fact since 2017), BOH did not receive any payments from the Debtor. Meanwhile, BOH incurred tens of thousands of dollars in attorney's fees to pursue its claims in the State Court Litigation and tens of thousands of dollars more in expenses for the maintenance and operation of the Property.

Thus, this bankruptcy appears to be nothing more than an effort to delay and frustrate the sale of the Property. It is duplicative of the State Court Litigation and a waste of judicial assets. And, there will be no prejudice or hardship to Debtor by allowing the State Court Litigation to proceed. On the other hand, it will cause substantial hardship to BOH if the stay is not lifted in order to allow the State Court Litigation to proceed. BOH will be forced to start all over again here in bankruptcy court when the proceedings were nearing an end in the State Court Litigation.

### III.  CONCLUSION

In light of the above, this Court should either dismiss this bankruptcy case or, in the alternative, grant relief from the automatic stay of bankruptcy to permit the State Court Litigation to proceed and for the Property to be sold by the Receiver and for the proceeds of the sale of the Property to be distributed as the Superior Court of DeKalb County, Georgia deems to be appropriate under applicable state law.

Respectfully submitted this 13th day of July, 2020.

                    MOORMAN PIESCHEL, LLC

                    /s/ Nicholas J. Pieschel
                    Nicholas J. Pieschel
                    Georgia Bar No. 579660

                    Attorney for Movant
                    Bank of Hope

One Midtown Plaza
Suite 1205
1360 Peachtree Street, NE
Atlanta, Georgia 30309
(404)898-1240
Fax: (404)898-1241
njp@moormanpieschel.com

~ 14 ~

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GEORGIA CENTRAL UNIVERSITY, INC. | : | CASE NO. 20-67718-BEM |
| | : | |
| Debtor. | : | |
| | : | |
| BANK OF HOPE | : | |
| | : | CONTESTED MATTER |
| v. | : | |
| | : | |
| GEORGIA CENTRAL UNIVERSITY, INC. | : | |

**CERTIFICATE OF SERVICE**

This is to certify that as of this date, I electronically filed the foregoing BANK OF HOPE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR RELIEF FROM STAY with the Clerk of Court using the CM/ECF system which will cause an electronic notification of such filing to be sent to the following:

| | |
|---|---|
| Cameron M. McCord | Todd Eugene Hennings |
| Aaron R. Anglin | Chapter 11 Subchapter V Trustee |
| Jones & Walden, LLC | Macey, Willensky & Hennings, LLP |
| 699 Piedmont Avenue NE | 5500 Interstate North Parkway |
| Atlanta, GA 30308 | Suite 435 |
| (404) 564-9300 | Sandy Springs, GA 30328 |
| Fax : (404) 564-9301 | (404) 584-1222 |
| E-mail: cmccord@joneswalden.com | E-mail: thennings@maceywilensky.com |
| aanglin@joneswalden.com | |

~ 15 ~

David S. Weidenbaum
Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 331-4437
E-mail: david.s.weidenbaum@usdoj.gov

This 13th day of July, 2020.

                                                       MOORMAN PIESCHEL, LLC

                                                       /s/ Nicholas J. Pieschel
                                                       Nicholas J. Pieschel
                                                       Georgia Bar No. 579660

                                                       Attorney for Movant
                                                       Bank of Hope

One Midtown Plaza
Suite 1205
1360 Peachtree Street, NE
Atlanta, Georgia 30309
(404)898-1240
Fax: (404)898-1241
njp@moormanpieschel.com