IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GEORGIA CENTRAL UNIVERSITY, INC. | : | CASE NO. 20-67718-BEM |
| | : | |
| | : | |
| Debtor. | : | |

**BANK OF HOPE'S OBJECTION TO**
**CONFIRMATION OF DEBTOR'S PLAN**

COMES NOW Creditor Bank of Hope ("BOH"), by and through its undersigned attorney, Nicholas J. Pieschel, and files this its Objection to Confirmation of Debtor Georgia Central University, Inc.'s ("Debtor") proposed Plan of Reorganization dated July 31, 2020 (the "Plan") and further shows this Court as follows:

FACTUAL BACKGROUND

BOH holds a perfected security interest in certain commercial real property owned by Debtor located 6789, 6801 and 6803 Peachtree Industrial Boulevard, Atlanta, Georgia 30360 (the "Property") by virtue of a Security Deed from the Debtor which was properly recorded in the real estate records of the Clerk of Superior Court of DeKalb County, Georgia. BOH is also the holder of an Assignment of Rents and Leases from Debtor and UCC Financing Statements which were properly recorded in the records of the clerk of the Superior Court of DeKalb County, Georgia further securing its interest in the rents, profits, accounts and other personal property of the Debtor. At the time that this bankruptcy was filed, Debtor was indebted to BOH in the total

- 1 -

amount of $2,261,699.48.

BOH's security interest in the property of Debtor described above were granted in exchange for a loan from to Debtor which is reflected by Promissory Note executed by Debtor dated December 3, 2010 in the original principal amount of $1,870,000.00 ( the "Note").  The interest rate under the Note is a variable rate which was 4.25% at origination.  And, the Note called for 83 monthly payments in the amount of $10,195.48 each with a final payment of $1,540,109.32 due on December 3, 2017.

However, beginning in early 2017, Debtor stopped making the monthly payments called for under the Note.  Additionally, Debtor failed to pay the balance owed on the Note when it became due in December 2017 and has not made any payments toward its debt to BOH since (except for 2 interim payments of $5,000.00 that were made after this bankruptcy case was filed).

As a result of Debtor's defaults, BOH filed a Complaint against Debtor in the Superior Court of DeKalb County, Georgia.  And, on July 31, 2019, a judgment was entered in favor of BOH and against Debtor in the total amount of $1,994,248.56.  With the additional interest that accrued, the total amount that Debtor owed BOH at the time it filed its petition in this case was $2,261,699.48.  BOH has filed a Proof of Claim in this case which includes an itemized statement of the amounts owed by Debtor.  [Claim 4; Part 2].

BOH commissioned a recent appraisal of the Property which was obtained on September 4, 2020.  According to that appraisal, the as is market value of the Property was only $2,125,000.00 as of September 1, 2020.  Based on the foregoing appraisal, BOH is under-secured and Debtor has no equity in the Property.

In addition to the security interest that BOH holds, there are a number of junior creditors who have secured claims against the Property. In particular, the Internal Revenue Service holds several liens against the Property for unpaid taxes. While Debtor claims that the total it owes the IRS is $155,000.00, the IRS has filed a Proof of Claim in which it claims that Debtor owes $279,386.60 in unpaid taxes. [Claim 3]. Additionally, according to the Debtor, it owes DeKalb County, Georgia property taxes which are past due in the total amount of $1,863.56. There are also two other lenders who hold secured claims against the Property. The first is NOA Bank which holds a security interest with respect to a loan which was originally in the amount of $400,000.00 but which Debtor claims has been reduced to $120,000.00. And, Charlie and Aimee So hold a security interest in the amount of $400,000.00. Thus, the total amount of secured debt on the Property far exceeds the amount of equity in the Property.

Under the Plan, Debtor's proposes to list the Property for sale for $4,000,000.00 and to sell the Property within 24 months providing monthly payments to BOH in the amount of $5,000.00 in the meantime. Debtor has employed the services of a broker to assist it in listing and marketing the Property for sale. However, it has not obtained an appraisal of the Property.

The terms of Debtor's proposed Plan are substantially different than those originally agreed to by Debtor and BOH. In particular, Debtor originally agreed to pay the loan in full by December 3, 2017. Now, Debtor is proposing to delay payment to BOH until some indefinite date when it can sell the Property which could be as long as 5 years after the balance on the loan became due. Additionally, the payments which Debtor proposes to pay to BOH during the term of the Plan are less than half of the monthly payments it was making to BOH before it defaulted on its obligations and significantly less than the amount of interest that is accruing on its debt to

BOH on a monthly basis. And, they are not sufficient to protect BOH's equity in the Property which is currently non-existent and likely to further decline during the term of Debtor's Plan.

Debtor proposes to fund its operations while it attempts to sell the Property from tuition and donation income it receives as well as rents received from the Real Property. According to the revised monthly budget previously filed by Debtor, Debtor anticipates receiving tuition and donation income in the total amount of $25,000.00 in August 2020 and $20,000.00 in the months of September, October and November 2020. Even assuming Debtor is able to generate the projected amount of tuition and donation income, Debtor projects that its expenses will exceed its income in the months of September and November with October barely breaking even. Debtor has not projected what its income will be beyond November 2020.

The amount of tuition and donation income which Debtor predicts is significantly higher than the amount of tuition and donation income Debtor was receiving immediately prior to filing its petition. In particular, Debtor's Statement of Financial Affairs [Doc. 21; p. 16] indicates that its total income for 2020 was only $39,593.00 which is a monthly average of $6,598.83 in tuition and donation income for the first six (6) months of 2020. And, Debtor's principal, Paul Kim, previously testified that the total amount of tuition and donation income Debtor received in 2019 was approximately $155,000.00 which is a monthly average of $12,916.67 in tuition and donation income.

While Debtor may be able to create the appearance of greater income for a short period of time, it requires a substantial leap of faith to believe that Debtor will suddenly start generating 2 and 3 times the amount of tuition and donation income it generated during the previous 18 months for the extended period of time Debtor's Plan requires. Likewise, Debtor's ability to sell

4

the Property for an amount that will be sufficient to pay all of its secured creditors during a historic global pandemic and its immediate financial aftermath is beyond speculative. It is purely wishful. Therefore, BOH objects to confirmation of Debtor's Plan as is further discussed below.

## OBJECTIONS TO PLAN

1. Debtor has failed to show that the Plan is feasible. As noted above, the sources of funding for Debtor's Plan are the income that it receives from the operation of its school and lease of the Property and the sale of the Property which it is seeking 24 months to complete.

However, there is not reliable evidence to support Debtor's claim that it will be able to generate income which is sufficient to pay the expenses to operate its business and the Property and fulfill its other obligations under its Plan throughout the 24 month term of the Plan. Even assuming that Debtor generates the amount of income projected in its monthly budget for August – November 2020, it still projects that it will have shortfalls in September and November 2020. And, it has not provided a budget beyond November 2020 or explained how it will have sufficient funds to operate during the months when school is not in session or has lower enrollment. As noted above, based on Debtor's income during the 18 months immediately prior to filing its petition, it is also highly unlikely that Debtor will be able to generate the amount of income it needs to perform its obligations under the Plan over an extended period of time.

Additionally, there is not reliable evidence to support Debtor's claim that it will be able to sell the Property for an amount that will be sufficient to pay off all of the secured creditors. Efforts to market the Property for sale which occurred shortly before the COVID-19 pandemic

5

resulted in an agreement to purchase the Property for $2,300,000.00. And, a recent appraisal of the Property indicates that the current fair market value of the Property is only $2,125,000.00.

But, Debtor would need to sell the Property for at least $3,400,000.00 to pay off all of its secured creditors as it proposes. And, it has not submitted any alternative appraisals of the current fair market value of the Property that suggests that it is or will be worth that amount in the foreseeable future. In fact, even the broker employed by Debtor, Paul Hanna, previously testified that the current fair market value of the Property may be $2,300,000.00. Mr. Hanna further testified that he anticipates that property values will fall, that recovery of the real estate market "will languish" and probably "go backwards" because of the current and ongoing COVID-19 pandemic. So, it is purely speculative to believe that Debtor will be able to sell the property for an amount sufficient to pay off all of its secured creditors any time within the terms of its proposed Plan.

Debtor's Plan simply does not have a reasonable assurance of success. If it is confirmed, it is likely to either fail due to Debtor's inability to meet its monthly obligations during the term of the Plan or due to Debtor's inability to procure an offer to purchase the Property for an amount that will be sufficient to pay off all of the secured creditors and will be followed by the liquidation or the need for further financial reorganization of the Debtor. As a result, Debtor's Plan should not be confirmed.

2. Debtor's Plan is not fair and equitable to BOH. Not only does Debtor's Plan propose to extend the time to re-pay BOH for almost twice as long as was originally contemplated by the parties. The term of the original loan to Debtor was from 2010 to 2017. Debtor now seeks until 2022 to pay BOH. And, except for 2 interim payments of $5,000.00 that

Debtor has made during this bankruptcy case, Debtor has not made any payments to BOH in over 3 years. Meanwhile, its debt to BOH has continued to grow.

While Debtor does propose to make some payments to BOH during the term of its proposed plan, the payments it proposes are less than half of the amount of the monthly payments it made to BOH prior to defaulting on its obligations. And, the payments it proposes are not sufficient to adequately protect BOH's equity in the Property which is non-existent and will likely continue to diminish during the term of the Plan. Such an arrangement does not guarantee that BOH will receive the full benefit of its bargain with Debtor.

Additionally, the Plan compromises BOH's interest in the Property because it does not account for the likelihood that the value of the Property will continue to depreciate. As noted above, BOH is currently under-secured. And, even the broker employed by the Debtor has admitted that he anticipates property values falling and that the real estate market will likely languish describing a "U" shaped recovery because of the COVID-19 pandemic. Not only does the Plan not adequately provide for the declining value of the Property, it does not provide for any significant repairs or maintenance to ensure that the condition of the Real Property does not deteriorate during the next 24 months. As a result, there is considerable risk that BOH's position in the Property will worsen.

3. The Debtor apparently has only a speculative and hopeful ability to fund Plan payments for any length of time. The Debtor's Plan depends on the payment of monthly rents of $8,615.73. But, one of the leases, i.e., the lease with S&S Brothers, LLC which accounts for rent in the amount of $2,750.00 per month, has expired by its terms and is apparently on a month to month basis. Additionally, the tuition and donation income Debtor is depending on is entirely

7

promissory in nature.  There is no assurance whatsoever that Debtor will be able to maintain a level of income which is sufficient to fund its obligations under the Plan throughout the 24 month period it seeks to sell the Property.

4.	There is already a proceeding in place which will accomplish what Debtor proposes, i.e., the continued operation and sale of the Property with court oversight.  In particular, at the time that Debtor filed its petition in this case, a civil action was pending in the Superior Court of DeKalb County, Georgia in which a receiver had been appointed to manage and operate the Property and market the Property for sale.  And, the receiver had submitted an agreement to purchase the Property to the Superior Court for its approval.  The Debtor was a party to those proceedings, represented by the same counsel in those proceedings and could have objected to the approval of that agreement and presented evidence to support the same proposal to sell the Property included in its Plan in those proceedings.

5.	BOH receives no benefit from Debtor's proposed Plan.  Prior to the filing of Debtor's petition, there was an agreement in place to purchase the Property for $2,300,000.00 which, if approved, would have been sufficient to pay Debtor's debt to BOH.  This Plan does not propose to do anything more than that.  It simply proposes to delay paying BOH for another 24 months.

## CONCLUSION

In order for its Plan to be approved, Debtor caries the burden of proof to establish a reasonable likelihood of rehabilitation and success as to its Plan which must be more than speculation.  <u>In re Concorde Limited Partnership</u>, 67 B.R. 717 (1986); <u>see</u> <u>also</u>, <u>In Re Maude H.</u>

Henderson, 395 B.R. 893 (2008) (holding that in order for property to be "necessary to an effective reorganization" so as to prevent lifting of automatic stay based on debtor's lack of equity therein, reorganization must be within reasonable prospect).  Since Debtor has failed to meet this burden, BOH objects to confirmation of the Plan and respectfully requests that this Court reject Debtor's Plan and either dismiss this case in its entirety as previously requested or grant relief from the stay in order to allow the receiver to operate and sell the Property, subject to court approval, in the proceedings that were previously pending in the Superior Court of DeKalb County, Georgia.

Respectfully submitted this 18th day of September, 2020.

MOORMAN PIESCHEL, LLC


/s/ Nicholas J. Pieschel
Nicholas J. Pieschel
Georgia Bar No. 579660

Attorney for Creditor
Bank of Hope

One Midtown Plaza
Suite 1205
1360 Peachtree Street, NE
Atlanta, Georgia 30309
(404)898-1243
Fax: (404)898-1241
njp@moormanpieschel.com

Case 20-67718-bem    Doc 65    Filed 09/18/20    Entered 09/18/20 11:42:10    Desc Main
Document      Page 10 of 11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GEORGIA CENTRAL UNIVERSITY, INC. | : | CASE NO. 20-67718-BEM |
| | : | |
| | : | |
| Debtor. | : | |

## CERTIFICATE OF SERVICE

This is to certify that as of this date, I served the foregoing BANK OF HOPE'S OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN by placing a copy of same in the U.S. Mail with sufficient postage to ensure delivery and by electronically filing same with the Clerk of Court using the CM/ECF system which will cause an electronic notification of such filing to be sent to the following:

Cameron M. McCord
Aaron R. Anglin
Jones & Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308
(404) 564-9300
Fax : (404) 564-9301
E-mail: cmccord@joneswalden.com
aanglin@joneswalden.com

Todd Eugene Hennings
Chapter 11 Subchapter V Trustee
Macey, Willensky & Hennings, LLP
5500 Interstate North Parkway
Suite 435
Sandy Springs, GA 30328
(404) 584-1222
E-mail: thennings@maceywilensky.com

David S. Weidenbaum
Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 331-4437
E-mail: david.s.weidenbaum@usdoj.gov
This 18th day of September, 2020.

MOORMAN PIESCHEL, LLC


/s/ Nicholas J. Pieschel
Nicholas J. Pieschel
Georgia Bar No. 579660

Attorney for Creditor
Bank of Hope

One Midtown Plaza
Suite 1205
1360 Peachtree Street, NE
Atlanta, Georgia 30309
(404)898-1243
Fax: (404)898-1241
njp@moormanpieschel.com